W. H. WORTH, State Treasurer, et al v. THE BANK OF NEW
HANOVER et al.

(Decided April 12, 1898.)

*Banks— Branch Banks—Principal and Agent—Insol-
vency of Principal Bank—Assets of Branch Banks—
Distribution of Assets.*

1. The Bank of N. H., under a provision of its charter authorizing it to
   establish agencies at such times and places and subject to such
   rules and regulations as the president and directors might desig-
   nate and prescribe, established a branch at W. under the name of
   "The Bank of N. H. at W.", the directors being elected and the cap-
   ital supplied by the parent Bank.  No capital stock was issued by
   the branch Bank, but it received deposits and dealt with the pub-
   lic as "The Bank of N. H. at W.", making semi-annual statements
   to the parent Bank, which included in the statements of its own
   assets the capital and surplus of the branch Bank.  Upon an as-
   signment by the parent Bank of all its assets, including the assets
   of the branch bank, for the benefit of creditors, the branch Bank
   also made an assignment for the purpose of protecting the depos-
   itors and others dealing directly with it.  *Held,* that the relation
   between the parent bank and the branch was that of principal and
   agent, and all the assets and indebtedness of the agency were
   those of the principal and the depositors and creditors of both
   must share ratably.

2. The establishment of a branch Bank by a Bank, having the authority
   under its charter to do so, is not an estoppel upon the latter so as
   to require it to treat the former as an independent Bank, and if
   such estoppel could arise as between the two it would not affect
   the creditors of the principal bank, who are entitled to have its
   property of every description applied ratably to the payment of
   their claims.

THIS ACTION is a consolidation of two actions, the one
brought in New Hanover Superior Court by Holmes &
Watters, in behalf of themselves and all other creditors,
against the Bank of New Hanover and Junius Davis, to
whom the bank had made a deed of assignment, and the

other brought in Wake Superior Court by S. McD. Tate, State Treasurer, against the Bank of New Hanover and Junius Davis (who had been appointed receiver in the Holmes & Watters case) and R. T. Bennett, assignee of the Bank of New Hanover at Wadesboro.

W. A. Smith, in behalf of himself and other creditors of the Bank of New Hanover at Wadesboro, became a party to the action by leave of Court and filed his petition praying that "the proper person be directed to pay and apply the assets of the Bank of Wadesboro to the payment of the creditors of said bank to the exclusion of the creditors of the Bank of New Hanover at Wilmington except as to any surplus after paying the creditors at Wadesboro." At January Term, 1896, an order was made referring the petition and the answer thereto "and the question of the separableness of the assets of the Bank of New Hanover at Wadesboro from the assets of the Bank of New Hanover at Wilmington, and the application of the assets of the two banks, to H. C. Jones, Esq., under *The Code*, to find all issues of law and fact. The referee made his report of his findings of fact and law, the latter of which were as follows:

"1. I find as a conclusion of law, that the Bank of New Hanover, by establishing the branch Bank at Wadesboro, with a President and Board of Directors and corps of officers, purely local, and granting them plenary powers in the management of all the affairs of the Bank, by assigning to it a distinct and specific capital and by suffering the profits to accumulate, by permitting it to hold itself out to the world as a separate and independent business, by advertising its condition independently of the parent Bank and by maintaining the branch Bank in this autonomous condition for nearly twenty years, with all the *indicia* of an inde-

pendent Bank, and for so long a time itself dealt with it as with an independent Bank, has thereby so held the same out to the world as a separate Bank that it is estopped, in favor of those who became its creditors, from denying the separate existence thereof, and this whether the Bank intended to create a trust or not.

2. I further find, as a conclusion of law, that the Bank of New Hanover, by its course of dealing with the branch Bank at Wadesboro, impressed the assets of the said branch Bank, including its specified capital of $25,000, and the increment thereof in the hands of the President and Directors thereof, with a trust in favor of those who became its creditors, and that the same passed by the assignment to R. T. Bennett impressed with this trust.

3. I further find, as a conclusion of law, that the general creditors have acquired no lien upon the assets of the Bank of Wadesboro, and that they have no equity superior or equal to that of the creditors of the Bank of Wadesboro growing out of the trust declared in their favor, as above stated.

4. I further find, as a conclusion of law, that the Bank of New Hanover, under its charter, had the power to establish the Bank at Wadesboro and to declare such a trust in favor of the creditors of the branch Bank as is claimed by them in this action.

5. I further find, as a conclusion of law, that the President and Directors of the branch Bank had no authority to make the deed of assignment to R. T. Bennett so as to impress the assets of the Bank with any new trusts, and that the only effect thereof was to pass the legal estate in the assets to R. T. Bennett, impressed with the original trust declared by the Bank of New Hanover in favor of the creditors of the branch Bank.

7. I further find, as a conclusion of law, that the assets of the branch Bank, in the hands of Leak, Receiver, should be applied, first, to the payment of the debts due by the branch Bank at Wadesboro, as distinguished from the debts due by the parent Bank at Wilmington, and that any surplus remaining after such debts are paid should be applied to the payment of the general creditors."

Upon the hearing of exceptions to the report at April Term, 1897, of New Hanover Superior Court, his Honor McIver, J., rendered judgment as follows:

"This cause coming on to be heard on the report of H. C. Jones, Esq., Referee, and the exceptions to said report filed by Junius Davis, Receiver, and the plaintiffs, and being heard; the Court sustains all of the findings of fact of said Referee and, on the exceptions made to the findings of fact, finds the following additional, to-wit: That the Directors and officers of said branch Bank conducted and managed the business of of said branch at all times subject to the control and direction of the President and Directors of the parent Bank at Wilmington, but said President and Directors of the parent Bank did not, in fact, exercise any actual control.

2. That the business of said branch Bank or agency was at all times conducted by the Directors and officers thereof, subject to the direction and control of the President and Directors of the parent Bank of Wilmington.

3. That said statements were demanded of said branch Bank or agency by the Treasurer of the State, under the Statute (Acts of 1891, Chapter 155) and were published by it in compliance with the orders of said

Treasurer; and said publications were not the voluntary acts of the Bank or its agency.

Said branch bank did publish its card in the Wadesboro newspapers.

4. That said statements of the condition of said branch Bank were demanded of said branch Bank or agency by the State Treasurer under the statute aforesaid, and were rendered by it in compliance with said demands, and were not voluntary acts of the parent Bank or its agency.

5th. That the President, Cashier and Directors of said agency were not officers or Directors of said corporation, the Bank of New Hanover.

The Court overruled all of the Exceptions to the conclusions of law by the Referee, and the Court sustains the conclusions of law as found by the Referee, to which the parties who filed exceptions except:

It is therefore ordered, adjudged and decreed by the Court that the assets of the branch Bank at Wadesboro now in the hands of James A. Leak, Receiveo, be applied to the payment of the debts contracted at, and due by the said branch Bank at Wadesboro, as distinguished from the debts contracted at, and due by the Bank of New Hanover at Wilmington; and that any surplus remaining after paying the expenses incident to the management of the trust by the Receiver at Wadesboro and the said debts at said branch Bank be returned over to Junius Davis, Receiver of the Bank of New Hanover at Wilmington, to be applied as the Court may direct.

It is further ordered that the costs incurred in this reference and adjudication be paid by Junius Davis, Receiver, out of any trust funds in his hands."

122—26

The plaintiffs and Junius Davis, Receiver, &c., appealed.

*Messrs. George Rountree* and *E. S. Martin* for plaintiffs and Junius Davis, receiver of defendant Bank, (appellants).

*Messrs. Jas. A. Lockhart* and *R. T. Bennett* for W. A. Smith and others, petitioners.

CLARK, J.:   This cause has been argued very ably and elaborately and with great wealth of citation.   In deference to counsel, time has been taken to consider the arguments and the opinions cited to sustain them.   But in the view we take of the case, the decision of the controversy depends upon a very few simple propositions.

The Bank of New Hanover was chartered by an Act of the General Assembly, ratified January 12, 1872, with the usual powers of a banking corporation, and established its principal place of business at Wilmington.   Section 9 of said Act provided: "Agencies of the bank may be established at such times and places as the President and directors may designate, and such agencies may be removed at any time and shall be subject to such rules and regulations as may be prescribed by the President and Directors of the bank."   Agencies under this authority were established at Goldsboro, Wadesboro and Tarboro, N. C., and Marion, S. C., styled in their reports respectively, "The Bank of New Hanover at Goldsboro" and "The Bank of New Hanover at Wadesboro", etc.   Some time since, the agencies at Goldsboro, Tarboro and Marion were discontinued and removed as authorized by said section 9.   On June 19, 1893, the Bank of New Hanover made an assignment of all its property "of every description whatso-

ever and wheresoever situate, including all that belongs
or may belong to its agency or branch bank at Wades-
boro." On the same day the agency or branch bank at
Wadesboro made a separate assignment, but without
any authority from the bank at Wilmington. The
property and deposits at Wadesboro, if appropriated
solely to the depositors at that point and other creditors
dealing directly with the agency, would be sufficient to
satisfy them in full, but if this property is placed with
the other assets of the bank of New Hanover and the
depositors and creditors dealing directly with the
agency at Wadesboro are to share generally with all
the creditors of the Bank of New Hanover, the *pro rata*
dividend will be small. Hence, the effort of the Wades-
boro depositors and creditors to have the assets at that
point declared a trust fund for their benefit, the surplus
alone, if any, to go into the assets of the Bank of New
Hanover. But it is found as a fact by the referee that
"There was no stock issued by the branch bank, (as it
is called for convenience) and there was no charter
therefor distinct from the Bank of New Hanover; that
the branch bank derived its authority solely from the
provisions of the Act chartering the Bank of New Han-
over and the action of the directors of the bank, estab-
lishing the branch bank, was in pursuance of the pow-
ers given by its charter." It necessarily followed that
the relation existing between the Bank of New Han-
over and the agency at Wadesboro was that of princi-
pal and agent, and all the assets of the agency belonged
to the principal, and all the debts of the agency were
debts of the Bank of New Hanover. *Prince* v. *Oriental
Bank*, Eng. L. R., 3 app. cases, 325; *Garnet* v. *Mc-
Kewau*, L. R. 8 Ex., 10; *Irvin* v. *Bank*, 38 U. C., Q. B.,

*Webb* v. *Bank*, 50 N. C., 288. This being so, the rule of distribution upon the insolvency of a corporation, both under the general law and Section 670 of *The Code*, is that all creditors shall share equally and ratably. No corporation can create a subordinate corporation without express legislative warrant. This is not only an uncontrovertible proposition of law, but the evidence is conclusive that in point of fact the bank did not attempt to create a subordinate corporation at Wadesboro. The Bank at Wilmington sent $25,000 to Wadesboro to start the branch bank business, and by resolution established a local board of three directors to manage it, and these directors, together with all the other officers, were from time to time elected by the parent bank in Wilmington, to which the officers and directors in immediate charge of the bank at Wadesboro transmitted their reports twice every year. In the published reports of the Bank of New Hanover in Wilmington, the items of capital and surplus funds always included the capital and surplus fund of the Wadesboro Bank, and the dividends were declared upon the total earnings, including those of the branch bank. There could be no charter for a bank at Wadesboro under the general incorporation law, since *The Code*, Section 684, expressly forbids it, and, indeed, there is no evidence of any effort to that end. There could be no estoppel on the Bank of New Hanover requiring it to treat the Bank at Wadesboro as an independent bank, since that would be to create a subordinate corporation, which it could not do, and its conduct in electing the officers of the branch at Wadesboro, which besides had no stockholders, and their having to transmit regular statements to the Bank of New Hanover at Wilmington, negative any other view than that the Wadesboro branch was a mere

agency.   Besides, if there could possibly be an estoppel on the bank from its dealings with the branch at Wadesboro, it would not affect the creditors of the Bank of New Hanover who are the real parties in interest, represented by the receiver, and who are entitled to have "its property of every description, wheresoever found" applied ratably (after discharging expenses and valid liens, if any) to all the creditors thereof, whether living at Wilmington or at Wadesboro, or elsewhere.

After full and careful consideration, each and all of the exceptions to the judgment of the Court below are sustained.

                                                    Error.